IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

NANOMECH, INC.                                                      PLAINTIFF

v.                              Case No. 5:13-CV-05094

ARUNYA SURESH                                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendant Arunya Suresh's motion to dismiss (Doc. 25) and brief in support (Doc. 26) and Plaintiff NanoMech, Inc.'s response in opposition (Doc. 27) and brief in support (Doc. 28). For the reasons described herein, Defendant's motion to dismiss (Doc. 25) will be construed as a motion for judgment on the pleadings and is hereby GRANTED.

## I.      Background

This lawsuit concerns the claim of NanoMech, Inc. ("NanoMech") that its former employee, Plaintiff Arunya Suresh, violated the terms of a Non-Disclosure Agreement ("NDA") and a covenant not to compete contained within her Employment Agreement. NanoMech is an Arkansas-based research and development company that specializes in creating nano-technology products, including nano-machining, manufacturing, lubrication, energy, biomedical coatings, and strategic military applications.

The amended complaint alleges that Suresh entered into an NDA with NanoMech on March 18, 2010, when in the course of evaluating a potential employment relationship with NanoMech. During these pre-employment talks, Suresh received certain proprietary and confidential information relating to NanoMech's materials, processes and their applications, and related business plans and strategies. (Doc. 3-2, p. 1). Under the terms of the NDA, Suresh was required to hold "in trust and

-1-

confidence" these pre-employment disclosures for a period of three years after the disclosures were made. *Id.*

NanoMech ultimately hired Suresh on March 22, 2010, just four days after she signed the NDA. As a condition of her employment as a Product Engineer/Tribologist[1] with NanoMech, Suresh executed an Employment Agreement on April 5, 2010. The Employment Agreement contained a covenant not to compete that stated that for a period of two years after the termination of Suresh's employment, she could not "directly or indirectly enter into, be employed by or consult in any business which competes with the Company." (Doc. 3-1). The Employment Agreement did not define what it meant to "compete with the Company," nor did it restrict the covenant's application to any particular geographical area.

As a Product Engineer for NanoMech, Suresh participated in projects that utilized nano-integrated materials and specialized manufacturing processes for nano-particle-based products. Suresh was privy to NanoMech's confidential and proprietary product concepts and prototypes, as well as research-related reports prepared in order to attract funding for NanoMech's suite of patent-pending nano-lubrication products. Suresh also had insight into the chemistries, methodologies, and formulations for NanoMech products and was trained on the chemical aspects of nano-integrated materials and manufacturing processes.

Suresh resigned from NanoMech on May 2, 2012, after informing the company that she planned to pursue higher education for the next two to four years. The amended complaint alleges that "[p]rior to Suresh's departure, it was discovered that she had forwarded several emails from her

---

[1] "Tribology" is the science of the mechanisms of friction, lubrication, and wear of interacting surfaces that are in relative motion. *Webster's II New College Dictionary* 1176 (2001).

NanoMech email account to a personal email account." (Doc. 3, p. 5). These emails allegedly contained "NanoMech's confidential, proprietary and trade secret information including formulations and testing results for NanoMech's nGlide™ product." *Id.* at p. 7. NanoMech also alleges that Suresh "was observed making hundreds of copies of NanoMech's documents," but does not describe what sorts of documents were allegedly photocopied. *Id.* at p. 5.

In October of 2012, a member of NanoMech's management team learned that Suresh was not pursuing higher education and was instead looking for a job "in a field of technology occupied by NanoMech." *Id.* NanoMech sent Suresh a letter reminding her of her obligations pursuant to the NDA and covenant not to compete. NanoMech later discovered after searching the internet that Suresh had accepted a job as an Application Chemist[2] with a company called BASF North America ("BASF"), beginning in January 2013. The amended complaint describes BASF as "a worldwide chemical company whose portfolio of products includes, among other things, equipment and engine lubricants that compete directly with NanoMech's nGlide™ products, which are the subject of a pending patent application." *Id.* at pp. 5-6. The claims for relief made in the amended complaint are premised on NanoMech's assumption that, in the course of Suresh's employment as an Application Chemist with BASF, she "will inevitably disclose to BASF, if she has not already," the formulation and testing of the nGlide™ products. *Id.* at p. 6.

There are three claims for relief in the amended complaint. The first two claims are for breach of contract due to Suresh's alleged violations of the NDA and the Employment Agreement's covenant not to compete. The last claim is for a permanent injunction barring Suresh from

---

[2] None of the pleadings submitted in this case define what Suresh's job as "Application Chemist" entailed.

disclosing any of NanoMech's confidential information and "from employment with BASF for the remainder of the term of the non-compete provision within the Employment Agreement." *Id.* at p. 9.

Suresh has moved to dismiss NanoMech's case based upon Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Suresh asserts that the NDA she signed prior to accepting a job with NanoMech expired on March 21, 2013.  Further, Suresh argues that NanoMech's allegation that she must have disclosed NanoMech's confidential and proprietary information to BASF while she was employed at BASF is too speculative to meet Rule 12(b)'s pleading standards.  Suresh also contends that the covenant not to compete contained within the Employment Agreement is invalid because it does not contain a reasonable geographic restriction.  Finally, Suresh maintains that NanoMech is not entitled to a permanent injunction because NanoMech has failed to state any facts that show it is suffering or will suffer irreparable injury due to any of Suresh's alleged acts or omissions.

## II.   Legal Standard

The first issue the Court must address is NanoMech's argument that the motion to dismiss must be denied as untimely, since Suresh filed it after she submitted an answer to the amended complaint.  NanoMech is technically correct that a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) cannot be filed after a defendant has filed an answer.  *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made *before pleading* if a responsive pleading is allowed.) (emphasis added).  However, a court is permitted to treat an untimely motion to dismiss pursuant to Rule 12(b)(6) as a 12(c) motion for judgment on the pleadings.  *See Wescott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) ("But since Rule 12(h)(2) provides that a

defense of failure to state a claim upon which relief can be granted may be advanced in a motion for judgment on the pleadings under Rule 12(c), we will treat the . . . motion as if it had been styled a 12(c) motion.") (internal quotation omitted).

The Eighth Circuit has held that the distinction between a 12(b)(6) motion and a 12(c) motion "is purely formal," and both motions are to be reviewed under the same standard. *Id.* In ruling on a motion for judgment on the pleadings, a court accepts as true all of the factual allegations contained in a complaint and reviews the complaint in the light most favorable to the plaintiff, drawing all reasonable inferences from the complaint in the plaintiff's favor. *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006). "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002).

Even though a court must assume that well-pleaded factual allegations contained in a complaint are true when evaluating a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court is not required to "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott*, 901 F.2d at 1488. Pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

A complaint that states facts that are sufficient to state a plausible claim should not be dismissed, as "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On the

other hand, when a court "can infer from those factual allegations no more than a 'mere possibility of misconduct,' the complaint must be dismissed." *Cole v. Homier Distrib. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

In evaluating a motion for judgment on the pleadings, which is analyzed using the same legal standards as a motion to dismiss, a court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

## III.   Discussion

### A.   Count I:  Breach of NDA

The NDA that Suresh signed during pre-employment discussions with NanoMech pertains to confidential and proprietary information that was shared with Suresh "solely for the purpose of evaluating a potential employment relationship," from March 18, 2010, the first possible date of disclosure, until March 22, 2010, the last possible date of disclosure and date Suresh was hired by NanoMech.  (Doc. 3-2, p. 1).  The Court may properly examine contract documents in deciding a motion for judgment on the pleadings or motion to dismiss. *Stahl v. U.S. Dept. of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).  Under Arkansas law, which governs the interpretation of the NDA, if the meaning of a written contract is unambiguous and does not depend on disputed extrinsic evidence, the construction and interpretation of the contract are questions of law that may be decided by the court. *Duvall v. Mass. Indem. and Life Ins. Co.*, 295 Ark. 412, 413 (1988).

None of the pleadings submitted in this case describe exactly what information was shared with Suresh during that limited period of time when she was engaged in pre-employment talks with NanoMech.  Instead, the amended complaint states the type of information Suresh was exposed to

*during* her employment with NanoMech, including research and development of nano-particle-based products, nano-integrated materials, and specific manufacturing processes. (Doc. 3, p. 4). Nevertheless, for the purpose of evaluating Suresh's motion for judgment on the pleadings, the Court will assume that Suresh acquired confidential, proprietary, or trade secret information about NanoMech and its particular products during the five-day pre-employment period covered by the NDA.

According to the plain language of the NDA, which in the Court's view appears to be a valid and binding contract, it expired three years after March 22, 2010, the last possible day that pre-employment disclosures could have been made to Suresh before she was hired by NanoMech. Therefore, the NDA expired on March 22, 2013 and is no longer in force. Suresh avers in her amended answer that she began work for BASF, NanoMech's alleged competitor, in January of 2013 and was terminated on June 3, 2013. (Doc. 24). Therefore, the NDA was applicable to Suresh's employment with BASF from January of 2013 to March 22, 2013.

Turning now to the issue of whether NanoMech has stated a valid claim for a breach of the NDA, the elements of a breach of contract claim under Arkansas law are (1) the existence of a valid and enforceable contract, (2) an obligation on the part of the defendant, (3) a breach of that obligation, and (4) damages resulting from the breach. *Rabalais v. Barnett*, 284 Ark. 527, 528-29 (1985). In considering these elements, the Court finds that NanoMech has stated sufficient facts to satisfy the first two. As for the third element, which requires a showing that a breach of a legal obligation occurred, NanoMech alleges that Suresh (1) made "hundreds of copies" of unspecified NanoMech documents, presumably with a photocopying machine, and (2) emailed certain confidential, proprietary documents concerning formulations and testing results for NanoMech's

-7-

nGlide™ product from her NanoMech email address to her personal email address.  (Doc. 3, p. 5).

Assuming as true NanoMech's allegation that Suresh made hundreds of photocopies of unspecified NanoMech documents, this act cannot constitute a breach of the NDA, since only confidential, protected NanoMech documents—in particular those received by Suresh between March 18 and March 22, 2010—could have been entitled to protection under that contract. NanoMech does not even attempt to speculate about which documents Suresh photocopied, but instead suggests that the act of photocopying in volume is in some way suspicious.  Accordingly, as NanoMech has provided the Court with no facts that show Suresh photocopied documents that were protected under the NDA, NanoMech has not stated a claim for breach of contract as to those documents.

With respect to the documents the Suresh allegedly emailed from her work account to her personal email account, the Court will assume these documents are covered under the NDA, since NanoMech specifies in the amended complaint that at least some of the emailed documents included formulations of NanoMech's confidential and valuable nGlide™ product.  Paragraph four of the NDA provides that "[t]he [confidential] Information shall not be copied, reproduced in any form or stored in a retrieval system or data base by Recipient [Suresh] without the prior written consent of Discloser [NanoMech] . . . ."  (Doc. 3-2, pp. 1-2).  Reading this provision of the NDA broadly, the Court finds there are sufficient facts alleged by NanoMech to show that Suresh could have breached the NDA by emailing certain confidential documents to her personal email account.

As for the fourth element of the cause of action for breach of contract—damages as a result of the breach—the Court finds that this element has not been properly pleaded, and its absence, despite the successful pleading of any other element of the claim, means that NanoMech has failed

to state a claim for breach of the NDA. NanoMech's claim for damages based on Suresh's alleged violation of the NDA is not a present claim for actual or nominal damages but a future claim of loss, based on sheer speculation as to Suresh's potential misuse of confidential documents.  Because NanoMech does not plead facts to show that Suresh actually misused, divulged, or otherwise misappropriated confidential information covered under the NDA, NanoMech is reduced to arguing that Suresh "will inevitably disclose [to BASF] NanoMech's confidential, proprietary or trade secret information based on the nature of her work in the field of chemistry."  (Doc. 3, p. 7).

"In general, damages recoverable for breach of contract are those damages which would place the injured party in the same position as if the contract had not been breached."  *Dawson v. Temps Plus, Inc.*, 337 Ark. 247, 258 (1999).  "Although recovery will not be denied merely because the amount of damages is hard to determine, damages must not be left to speculation and conjecture."  *Id.*  Here, NanoMech does not contend that it has suffered any losses attributable to Suresh's alleged breach of the NDA.  In fact, NanoMech's response to Suresh's motion for judgment on the pleadings makes it clear that even NanoMech realizes its claim for damages is speculative.  However, NanoMech attempts to salvage its claim by arguing that pursuant to the "inevitable-disclosure doctrine" approved of by the Arkansas Supreme Court in the case of *Cardinal Freight Carriers, Inc. v. J.B. Hunt Transport Services, Inc.*, 336 Ark. 143 (1999), this Court should find it sufficient for pleading purposes that Suresh's job as a chemist for NanoMech's competitor made it "inevitable" that she would disclose NanoMech's confidential information in the course of her new employment.

As a preliminary matter, the Eighth Circuit has neither accepted nor rejected the inevitable-disclosure doctrine, and the Arkansas Supreme Court has only theoretically approved of the doctrine's use in the limited context of issuing temporary, emergency relief for certain violations of

the Arkansas Trade Secrets Act, Ark. Code Ann. §§ 4-75-601 *et seq*.  The Trade Secrets Act may be violated through either an actual or threatened misappropriation.   Ark. Code Ann. § 4-75-604.

Importantly, even though the Arkansas Supreme Court has expressed approval of the inevitable-disclosure doctrine in Trade Secrets Act cases, and has stated that the doctrine may justify the issuance of preliminary injunctions under certain circumstances, it has not yet affirmed the issuance of an injunction based on the application of the doctrine.  *See ConAgra, Inc. v. Tyson Foods, Inc.*, 342 Ark. 672, 679 (2000) (voiding injunctions issued for violations of the Trade Secrets Act pursuant to the inevitable-disclosure doctrine because facts did not warrant the doctrine's application); *Bendinger v. Marshalltown Trowell Co.*, 338 Ark. 410, 421 (1999) (discussing potential application of inevitable-disclosure doctrine, but affirming state court's decision to deny injunction based on lack of evidence of inevitable disclosure); *Cardinal Freight*, 336 Ark. at 153 (discussing with approval the inevitable-disclosure doctrine but affirming issuance of preliminary injunction on other grounds).  *See also Statco Wireless, LLC v. Southwestern Bell Wireless, LLC*, 80 Ark. App. 284, 301 (Ark. Ct. App. 2003) (determining that injunction to prevent misappropriation of trade secrets was not warranted due to insufficient evidence to support finding of inevitable misappropriation); *Texarkana Behavioral Assoc., L.C. v. Universal Health Servs., Inc.*, 748 F. Supp. 2d 1008, 1015-16 (2010) (reasoning that even in a Trade Secrets Act case, some evidence "beyond possession of potentially useful information is needed to demonstrate inevitability").

A search of the relevant case law reveals that there is no precedent for applying the inevitable-disclosure doctrine as NanoMech describes:  to infer or impute potential losses in a breach-of-contract action.  The doctrine has only been applied in Trade Secrets Act cases, particularly where plaintiffs have alleged the "threatened misappropriation of trade secrets," a

discrete violation of the Act that is inherently speculative in nature.  The Arkansas Supreme Court's decision in the *Cardinal Freight* case does not stand for the proposition that it is enough for an employer to merely state its assumption that a disclosure of trade secrets occurred or will occur in order for the court to grant relief.  336 Ark. at 152-53.  Quite to the contrary, in *Cardinal Freight*, the employees and their new employer *actually threatened* to use or disclose the former employer's trade secrets, and this was the basis for the trial court's issuance of an injunction.  *Id.*

By contrast, NanoMech asks the Court to assume that Suresh *must have* misused confidential information because she emailed certain documents to her personal email account and at some point went to work for NanoMech's competitor.  These facts, as alleged, are insufficient to show that an actual loss or damage flowed from Suresh's breach.  If the breach were harmless, certainly no cause of action would exist.  Moreover, speculative pleading is not countenanced by the federal rules.  *See Twombly,* 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Therefore, NanoMech's claim for breach of the NDA will be dismissed for failure to state sufficient facts to show that the breach resulted in damages.  Dismissal will be without prejudice to NanoMech's right to bring a future, non-speculative claim for a breach of the NDA if facts supporting such a claim materialize prior to the expiration of the statute of limitations.[3]

## B.     Breach of Non-Compete Agreement

In Count II of its amended complaint, NanoMech alleges that Suresh breached a clause in her

---

[3] In its response to Suresh's motion to dismiss, NanoMech asserts for the first time a claim for a breach of the "Confidential Information" provision of the Employment Agreement (Doc. 3-1, p. 2).  The Court declines to consider this claim, as it does not appear in the amended complaint.  Further, even if the claim had been asserted properly, it would have been subject to dismissal for the same reasons the NDA claim was dismissed.

Employment Agreement, located at paragraph nine, that contained a covenant not to compete with NanoMech for a period of two years following her separation from the company.  (Doc. 3-1, p. 3).  In general, covenants not to compete in employment contracts are disfavored under Arkansas law and thus are subject to stricter scrutiny than those connected with a sale of business.  *HRR Arkansas, Inc. v. River City Contractors, Inc.*, 350 Ark. 420, 431 (2002).  In order for a non-compete agreement to be valid, three requirements must be met: (1) the covenantee must have a valid interest to protect, (2) the geographical restriction must not be overly broad, and (3) a reasonable time limit must be imposed.  *Jaraki v. Cardiology Assocs. of Ne. Ark., P.A.*, 75 Ark. App. 198, 204 (Ark. Ct. App. 2001).

NanoMech concedes that the covenant not to compete that is embedded in the Employment Agreement fails to include a geographic restriction and instead prohibits Suresh from working *anywhere* for any business that competes with NanoMech.  Nevertheless, NanoMech maintains that under Arkansas law, non-compete agreements that lack geographic restrictions are still enforceable.  In support of this contention, NanoMech cites to *Girard v. Rebsamen Insurance Co.*, 14 Ark. App. 154 (Ark. Ct. App. 1985), a case in which the Arkansas Court of Appeals held that a non-compete agreement that prohibited an insurance salesman from soliciting or accepting business from customers whose accounts he serviced at the time of his termination was reasonable under the circumstances, even though the covenant contained no geographic limitation.

The *Girard* case does not apply here, as it is an exceptional, fact-driven case in which a non-compete agreement without a geographic restriction was deemed enforceable.  The Arkansas Supreme Court in *HRR Arkansas, Inc. v. River City Contractors, Inc.*, 350 Ark. at 431, discussed the implications of *Girard* and noted that, despite the lack of geographic restrictions in Girard's non-

compete agreement, it still permitted him to accept business from 95% of the overall insurance market and 80% of the customers of his former employer's office.  The covenant did not, therefore, unreasonably restrict Girard's ability to work and make a living in a particular industry or across a geographic area.  Instead, the covenant's restrictions were customer-specific.  *Id.*

NanoMech's covenant not to compete is more like the covenant in the case of *Bendinger v. Marshalltown Trowell Co.*, 338 Ark. at 418, which the Arkansas Supreme Court found to be unenforceable.  Like *Girard*, the covenant in *Bendinger* contained no geographic restriction; however, unlike *Girard*, the covenant in *Bendinger* was not customer-specific but instead prohibited Bendinger from working for any company that his former employer considered a "competitor."  *Id.* at 418-19.  The *Bendinger* court's discussion of the interpretation of the term "competitor" in the non-compete agreement is particularly apt considering the similar language in NanoMech's covenant.  The *Bendinger* court opined:

> Marshalltown defines "competitor" as "any company in the trowel industry that is in competition with Marshalltown for sales in the United States, regardless of where that company is located."  Marshalltown suggests that the use of the word "competitor" in its agreement with Bendinger supplies a sufficient geographic restriction which this court should uphold, but that term as Marshalltown wishes to define it is not contained in the covenant, and we are unable to rewrite the restrictive covenant to supply it.  The court has held that the contract must be valid as written, and the court will not apportion or enforce a contract to the extent that it might be considered reasonable.

*Id.* at 419.

Using the same reasoning the *Bendinger* court relied on in interpreting the term "competitor," this Court finds the phrase "any business which competes" in NanoMech's Employment Agreement to be vague and undefined.  NanoMech's Agreement does not supply a sufficient geographic restriction for the non-compete clause, and the Court lacks the authority to rewrite the covenant to

clarify whether BASF—or any other company, for that matter—would meet NanoMech's definition of a "business which competes" against NanoMech.  NanoMech's covenant is so overbroad that it cannot even be interpreted to mean that it has a nationwide limitation.  Indeed, NanoMech goes so far as to suggest in its brief to the Court that the covenant not to compete could be enforced against Suresh "around the globe," and that "*[a]ny* geographic restriction within a non-compete agreement with the Defendant would not sufficiently protect NanoMech's intellectual property."  (Doc. 28, p. 6) (emphasis added).

NanoMech's covenant not to compete is unreasonable and contrary to public policy because it prevents Suresh from working anywhere for a two-year period for an undefined set of "competitors" of NanoMech.  Like the court in *Bendinger*, this Court finds that the phrase "any business which competes" to be unenforceable, and no cause of action exists for a breach of an unenforceable contract.  This claim will be dismissed with prejudice.

## C.    Permanent Injunction[4]

In Count III of the amended complaint, NanoMech requests a permanent injunction "barring Suresh from employment with BASF for the remainder of the term of the non-compete provision

---

[4] The amended complaint requests relief in the form of a temporary restraining order, a preliminary injunction, and a permanent injunction.  Out of these three forms of relief, the only one the Court will consider in this memorandum opinion and order is NanoMech's request for a permanent injunction.  Local Rule 7.2(e) states that "[p]retrial motions for temporary restraining orders, motions for preliminary injunctions, and motions to dismiss shall not be taken up and considered unless set forth in a separate pleading accompanied by a separate brief."  In a previous order dated May 14, 2013 (Doc. 2), the Court warned Nanomech that compliance with this Local Rule was required in order for the Court to consider any request for temporary or emergency relief.  Yet, at no point in this litigation did NanoMech comply with Local Rule 7.2(e) by filing a separate pleading or brief in support of its requests for a temporary restraining order and/or preliminary injunction.  Accordingly, the only relief properly before the Court in Count III is NanoMech's request for a permanent injunction.

within the Employment Agreement, and enjoining her from disclosing any of NanoMech's confidential information." (Doc. 3, p. 9). As discussed previously, the covenant not to compete contained in the Employment Agreement is unenforceable, so the Court will not issue an injunction to enforce the terms of the covenant. With regard to NanoMech's request for an injunction barring Suresh's disclosure of NanoMech's confidential information, either pursuant to the NDA or the "Confidential Information" provision of the Employment Agreement, the legal requirements for the issuance of a permanent injunction are: (1) a threat of irreparable harm, (2) that the harm outweighs any injury which granting the injunction would inflict on other parties, (3) a likelihood of success on the merits, and (4) that the public interest favors the injunction. *Dawson*, 337 Ark. at 261.

First, the Court does not find that NanoMech has made a showing of irreparable harm. Suresh is no longer employed by BASF and has, in fact, filed a counterclaim against NanoMech in these proceedings, in which she maintains she was fired from BASF because of NanoMech's acts taken during the course of this lawsuit. Second, NanoMech alleges no facts that state that Suresh has actually disseminated or misappropriated NanoMech's confidential or proprietary information. Instead, as previously discussed, NanoMech maintains that Suresh "will inevitably disclose" NanoMech's confidential information to NanoMech's competitors.

The Court finds that, to the extent NanoMech requests a permanent injunction barring Suresh's *future* dissemination of proprietary information to a potential employer, the threat of irreparable harm occasioned by a future breach of contract does not justify injunctive relief. At this juncture, NanoMech has failed to state a claim for a breach of the NDA, and the covenant not to compete in the Employment Agreement has been invalidated. Therefore, NanoMech has not evidenced a likelihood of future success on the merits with respect to either of these breach of

-15-

contract claims.  Further, there is no compelling reason why the public interest would favor the issuance of a permanent injunction under the facts of this case.  The Court is not convinced that any actual or threatened disclosure of confidential information occurred, and therefore, the possibility of its occurrence in the future is too remote to justify injunctive relief.  If NanoMech is able to bring a valid claim for breach of contract against Suresh in the future, injunctive relief may then be warranted.  Until then, however, the Court will deny without prejudice NanoMech's request for permanent injunction for failure to state a claim.

IV.     **Conclusion**

For all of the reasons set forth above, IT IS ORDERED that Defendant Arunya Suresh's motion to dismiss (Doc. 25), as construed as a motion for judgment on the pleadings pursuant to Rule 12(c), is GRANTED.   Accordingly, Plaintiff NanoMech, Inc.'s amended complaint is DISMISSED as follows:  Count I of the amended complaint, alleging a breach of the Non-Disclosure Agreement between Suresh and NanoMech, is DISMISSED WITHOUT PREJUDICE.  Count II of the amended complaint, alleging a breach of the covenant not to compete contained within the Employment Agreement between Suresh and NanoMech is DISMISSED WITH PREJUDICE.  Count III of the amended complaint, requesting a permanent injunction is DISMISSED WITHOUT PREJUDICE.

Defendant's counterclaim alleging tortious interference with business expectancy remains pending and set for trial.

IT IS SO ORDERED this 9th day of September, 2013.

*/s/ P. K. Holmes,* III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE